[No. 66563-0. En Banc.]

Argued December 8, 1998.     Decided February 4, 1999.

NICHOLAS DUMAS, *Respondent*, v. BOBBIE GAGNER, *as Benton County Auditor,* ET AL., *Appellants.*

*Andrew K. Miller, Prosecuting Attorney,* and *Terry M. Tanner, Jr., Deputy,* for appellant Gagner.

*Charles K. Wiggins,* for appellant Frost.

*Terry E. Miller,* for respondent.

*Christine O. Gregoire, Attorney General,* and *Jeffrey T. Even, Assistant,* on behalf of the Secretary of State, amicus curiae.

SMITH, J. — Appellant Sue Frost seeks direct review of a Benton County Superior Court order annulling and setting aside her election as Commissioner of Port District Number One of the Port of Kennewick because she is not a resident of that District but is a resident of District Number Two.[1] We granted review. We reverse.

---

[1] Appellant Bobbie Gagner, Benton County Auditor, although designated as an appellant, has not appealed the trial court's decision, as she neither supports nor opposes it. Br. of Appellant Bobbie Gagner, Benton County Auditor at 2-3. She has requested an interpretation from this court concerning the responsibility of a county auditor in determining the correctness of a residence address in the absence of a legislative remedy. *Id.* at 3-4. We decline to answer that question under the limited facts of this case.

272

## QUESTION PRESENTED

The question presented in this case is whether the trial court was correct in granting the petition of Respondent Nicholas Dumas to annul and set aside the election of Appellant Sue Frost as a Commissioner of District One of the Port of Kennewick.

## STATEMENT OF FACTS

On November 26, 1997, Respondent Nicholas Dumas filed in the Benton County Superior Court a petition claiming that Appellant Bobbie Gagner, Benton County Auditor, as an election officer, committed a wrongful act by certifying the election of Appellant Sue Frost to the office of Commissioner for District Number One of the Port of Kennewick.[2] On December 15, 1997, the court allowed Appellant Frost to intervene.[3]

In his petition, Respondent claims that Appellant Gagner, as Benton County Auditor, erroneously assigned Appellant Frost to voter precinct W2-P636 in Port Commissioner District Number One, when Appellant's residence at 4107 West 43rd Avenue is on a lot situated completely within voter precinct W2-P690 and Port Commissioner District Number Two.[4] Respondent contends that, because of the erroneous assignment, the Benton County Auditor committed a wrongful act in certifying Appellant Frost's election as Commissioner for District Number One because RCW 53.12.010(1)(a) provides that " '[o]nly a registered voter who resides in a commissioner district may be a candidate for, or hold office as, a commissioner of the commissioner district . . . .' "[5]

---

[2]Clerk's Papers at 249-50.

[3]*Id.* at 247-48.

[4]*Id.* at 249-50.

[5]*Id.*

The election was certified on November 19, 1997,[6] and Respondent Dumas filed his petition on November 26, 1997.[7]

The following diagram illustrates the relative locations of Appellant Frost's three lots on West 43rd Avenue in Kennewick, indicating (1) residential property on Lot One at 4107 West 43rd Avenue and (2) contiguous unimproved property designated as Lots Six and Five at 4105 and 4103 West 43rd Avenue:

City of Kennewick

WEST 43rd AVENUE

*4107 WEST 43RD AVENUE*
*Sue Frost, Owner*
*(Address assigned by City of Kennewick)*

| *Lot One* | *Lot Six* | *Lot Five* |
| | *[4105 WEST 43RD AVENUE]* | *[4103 WEST 43RD AVENUE]* |

SECTION 16, DISTRICT TWO
PRECINCT W2-P690
(based upon plat map used by city)

$$W \overset{N}{\underset{S}{+}} E$$

[6]*Id.* at 46, 244.

[7]*Id.* at 207.

Respondent asked for a declaratory judgment that the Benton County Auditor committed a wrongful act in placing Appellant Frost in the wrong precinct and that Appellant Frost was not qualified to hold office.[8] In addition, Respondent asked the court to set the election aside.[9] On December 18, 1997 and January 16, 1998, a hearing on the merits was held in the Benton County Superior Court before the Honorable Dennis D. Yule.[10] On February 17, 1998, the court issued a memorandum decision granting the petition.[11] On February 25, 1998, Appellant Frost filed a motion to stay enforcement of the judgment.[12] A hearing on the motion was held on February 26, 1998.[13]

On March 2, 1998, the trial court entered its order setting aside and annulling the election of Appellant Frost to the office of Port Commissioner for District Number One.[14] The court concluded, as a matter of law, that Appellant Frost resides in Port Commissioner District Number Two, and not in District Number One; and consequently the Benton County Auditor erroneously issued a certificate of election to Appellant Frost.[15] The court also allowed a thirty-day stay to permit the parties to seek a stay of the judgment pending appeal.[16]

On March 3, 1998, the court signed Amended Findings of Fact and Conclusions of Law as follows:[17]

---

[8]*Id.* 250-51

[9]*Id.* at 251.

[10]*Id.* at 8.

[11]*Id.* at 71.

[12]*Id.* at 44.

[13]Report of Proceedings at 440.

[14]Clerk's Papers at 30-31.

[15]*Id.* at 29.

[16]*Id.* at 18-19.

[17]*Id.* at 29 (emphasis added).

## Findings of Fact

1. At all pertinent times the western boundary of that portion of Port of Kennewick Commissioner District Number One which includes section 15, T8N, R29E, WM, has been and is the section line between sections 15 and 16, T8N, R29E, WM.

2. At all pertinent times the western boundary of voting precinct W2-P636, separating it from voting precinct W2-P690 immediately to the west, has been and is the section line between sections 15 and 16.

3. Union Street in the city of Kennewick runs north and south; its center line is the section line separating sections nine and ten immediately north of sections 15 and 16 and separating sections 15 and 16 to the point where Union Street ends at its intersection with 27th Avenue. If Union Street were extended as a straight line south from that intersection it would run along the western boundary of section 15 and voting precinct W2-P636.

4. During or before 1992 Frost acquired Lots five and six, block four, Canyon Lakes Number 11, Phase Two, and Lot one, Canyon Lakes South Hill, Phase One. The three lots are adjacent to each other, forming a row of three lots running east and west, so that the eastern boundary of Lot one is the western boundary of Lot six, and the eastern boundary of Lot six is the western boundary of Lot five. The three lots are bounded on the north by West 43rd Avenue. The section line separating sections 15 and 16 constitutes the boundary line which separates Lot one from Lot six. Lot one is in section 16; Lots six and five are in section 15.

5. In 1992 Frost began planning and construction of houses on the above described property. Early preliminary plans called for a house (variously referred to as an office/maid's quarters and as a guest house) to be constructed principally on Lot six with a portion extending westerly onto Lot one and a larger, main house to be constructed on Lot one. The plans were later modified to locate both houses entirely on Lot one.

6. When construction began on the houses, West 43rd Avenue extended west only to approximately the boundary between Lots one and six, where it terminated in a turn around.

No completed street then bordered Lot one. Access to construction of the houses on Lot one was by a temporary driveway from West 43rd Avenue entering the property at approximately the boundary between Lots six and five and proceeding across Lot six to the construction sites.

7. During or after construction of the houses, West 43rd Avenue was extended west along the northern boundary of Lot one. Since then access to the three lots has been provided solely by a driveway from West 43rd Avenue onto Lot one.

8. Frosts's [sic] property lies within the city limits of the City of Kennewick, and the Kennewick billing official responsible for determining and assigning street addresses to new properties assigned the addresses 4103 West 43rd Avenue, 4105 West 43rd Avenue and 4107 West 43rd Avenue to Lots five, six and one, respectively.

9. At the time that building and utility permits for construction of the houses on Lot one were initially issued by the City of Kennewick, the street address used for those permits was 4105 West 43rd Avenue, the street address assigned by the city to Lot six, at which access to the construction on Lot one was provided. The title report for Frost's residence stated the street address to be 4103 West 43rd Avenue.

10. Frost has lived in the houses on Lot one since 1992, first in the smaller of the two and then, upon its later completion, in the larger, main house.

11. Frost's entire property, consisting of the three lots, has been enclosed by a three strand barbed wire fence. At her expense, Frost constructed a sidewalk adjacent to West 43rd Avenue along the northern boundary of the three lots. Following construction, those portions of Lots five and/or six which had been utilized for access to the house construction sites were reseeded for the purpose of returning them to their natural condition.

12. The immediate area surrounding the two houses is artificially landscaped with lawns and shrubbery, an outdoor swimming pool, rock walls, a paved driveway, concrete landscaping strips, black rock and an underground sprinkler system. This improved area lies almost entirely within Lot one. Beyond that area the property is maintained in its natural state of flora and fauna.

13. The only improvements or alterations on Lot five are the barbed wire boundary fencing and the sidewalk along its northern boundary.

14. The only improvements or alterations on Lot six are the boundary fencing and sidewalk along its northern boundary and some concrete landscaping strip and rock and shrubbery extending its farthest point approximately 24.5 feet east from the west boundary of Lot six.

15. Frost's current plans are for the addition, within the next year or two, of additional parking, a croquet court and a ramada on Lot six and/or five.

16. Since her acquisition of the property Frost has considered the three lots to be a single parcel forming an enclosed, residential compound. The two houses were located with the intent of their being in approximately the center of such compound.

17. Lots, one, six and five have never been legally consolidated into a single legal parcel and remain three legally separate and distinct parcels of property.

18. *In 1992 Frost registered to vote by providing the Auditor with the information requested, consisting principally of the street address assigned by the City of Kennewick to the houses, 4107 West 43rd Avenue. Based upon that address and its application by Auditor's office personnel to a Kennewick street grid map provided by the city and utilized by the Auditor as a city voting precinct map, Frost was registered in voting precinct W2-P636. W2-P636 is in Port District No. 1. Frost has remained registered and regularly voted in that precinct since then.*

19. *The Auditor's assignment of Frost to precinct W2-P636 was based solely upon the street address provided and was premised upon the inference drawn by Auditor's office personnel that street number 4107 signified the address was located east of the north-south 4400 grid line formed by Union Street on the map, as extended southward to West 43rd Avenue, and west of the north-south 4000 grid line formed by Quillan Street on the map, as extended southward to West 43rd Avenue, thereby placing 4107 West 43rd Avenue within the boundaries of precinct W2-P636.*

20. The street grid map provided by the City of Kennewick implies that street numbers are assigned consistent with the general north-south and east-west grid pattern of the city's arterial streets. However, the city in fact assigns street numbers with reference to the actual location of streets rather than by a grid system. Consequently, when Union Street, a north-south street, deviates from the grid where it emerges as South Union just north of West 43rd Avenue and curves to the southwest, it is not possible to determine solely from the assigned street number, 4107, where that address lies with reference to the 4400 grid line generally represented on the map by Union Street.

21. *Lot one, and the street number 4107 assigned to it, are located in section 16, voting precinct W2-P690 and Port Commissioner District Number Two. Lots six and five, and the street numbers 4105 and 4103 assigned respectively to them, are located in section 15, voting precinct W2-P636, and Port Commissioner District Number One.*

22. When the Port of Kennewick established the current port commission district boundaries in 1992, the western terminus of West 43rd Avenue was a turnaround at approximately the west boundary of Lot six. At that time, it was the intention of Port District personnel drawing proposed boundaries to include the entire Canyon Lakes neighborhood in Port Commissioner District Number One. Lots one, six and five are in the Canyon Lakes neighborhood. Frost pays dues to the Canyon Lakes Home Owners Association.

23. *In July 1997, Frost filed a declaration of candidacy for the position of Port of Kennewick Commissioner, Commissioner District Number One with the Auditor. In doing so, Frost provided the Auditor with her street address and confirmed that the Auditor's records showed her to be registered in precinct W2-P636 and to accordingly be within Port Commissioner District Number One. Frost relied in good faith upon the Auditor's records and determination and such reliance was reasonable.*

24. *In the primary election conducted only in Port Commissioner District Number One, Frost received the most votes of the three candidates.* At least one of the other candidates publicly raised the issue of location of her residence before the primary election.

25. Prior to the general election, Frost's opponent, Wally [sic] Hickerson, filed a legal action seeking to have Frost removed from the ballot on the basis of the location of her residence. That action was dismissed as untimely under the appropriate statute.

26. *In the general election conducted throughout the three Port Commissioner Districts, Frost received 60 percent of the total vote and a majority of the votes cast in each precinct.*

27. Dumas did not hire his attorney and is not responsible for payment of his fees.

Based on these Findings of Fact, the court enters its:

### Conclusions of Law

1. Frost resides in Port Commissioner District Number Two.

2. The Auditor erred in issuing Frost a Certificate of Election to the office of Port Commissioner for Port Commissioner District Number One.

3. The election of Frost to the office of Port Commissioner for Port Commissioner District Number One should be annulled and set aside.

4. Dumas should be awarded such statutory costs as he has paid, if any.[18]

None of the parties takes exception to the findings of fact, but the case is nevertheless before us on a challenge to the conclusions of law.[19]

On March 31, 1998, this Court granted Appellant Frost's motion to stay the trial court's judgment pending appeal.[20] Appellant Frost sought direct review by this court which was granted September 3, 1998. She contends the trial court erroneously concluded she resides in Port Commis-

---

[18]*Id.* at 21-29.

[19]Br. of Appellant Bobbie Gagner, Benton County Auditor at 1; Appellant's Br. at 12; Br. of Resp't Dumas at 3.

[20]Ruling Granting Mot. to Stay at 4.

sioner District Number Two because she in fact resides in Port of Kennewick District Number One and that filing of the challenge by Respondent Dumas was untimely.[21]

Respondent Dumas asks this court to amend the trial court judgment setting aside the election to also declare Appellant Frost's opponent, Wallace W. Hickerson, the duly elected Commissioner for Port of Kennewick District Number One.[22]

## DISCUSSION
### STANDARD OF REVIEW

██ Appellant Frost has assigned no error to any finding of fact by the trial court. Those findings are thus accepted as verities.[23] Conclusions of law based on those facts, however, are reviewable by this court, and the facts must justify the decision of the trial court.[24]

### TIMELINESS

Under RCW 29.65.010, a registered voter may contest, on several grounds, the right of a person elected to an office to be issued a certificate of election.[25] Election contests are subject to time limitations set forth in RCW 29.04.030.[26]

Appellant Frost contends that because the action by her

---

[21]Appellant's Br. at 8-9, 11.

[22]Br. of Resp't Dumas at 10. Respondent testified he is the stepson of Wallace W. Hickerson, Appellant Frost's opponent, and that Mr. Hickerson asked him to sign the petition instituting this legal action. Report of Proceedings at 261-62.

[23]*Riley v. Rhay*, 76 Wn.2d 32, 33, 454 P.2d 820 (1969); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). *See also Union Local 1296, Int'l Ass'n Firefighters v. City of Kennewick*, 86 Wn.2d 156, 161, 542 P.2d 1252 (1975).

[24]*State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981).

[25]RCW 29.65.010 provides, in part, that "[a]ny registered voter may contest the right of any person declared elected to an office to be issued a certificate of election for any of the following causes: . . . (2) Because the person whose right is being contested was not at the time he was declared elected eligible to that office; . . ."

[26]RCW 29.65.010 (final unnumbered paragraph); *see also Becker v. Pierce County*, 126 Wn.2d 11, 21, 890 P.2d 1055 (1995).

opponent, Wallace W. Hickerson, challenging her name on the primary ballot was dismissed as untimely under RCW 29.04.030(3),[27] no other person could bring such an action,[28] inferring that the petition now before this court was brought under the same section. Appellant claims that any action challenging her certification after the election would interfere with "the intent of the legislature to insure the sensible and effective exercise of the right to vote by the people of the state."[29]

Under RCW 29.04.030(3), an affidavit claiming that the name of a person was wrongfully placed on a ballot must be filed no later than three days following certification of the primary election.[30] However, Respondent Dumas' petition does not rely specifically on that section, nor does he ask for the relief available under it. The fact that the legislature has specified grounds for contesting an election in RCW 29.65.010 is a contrary response to Appellant Frost's claim that such a challenge is contrary to the legislative purpose.

In addition, Appellant Frost argues that because Respondent's petition employs the words "wrongful act" found in RCW 29.04.030(4), the election cannot be set aside because that relief is not available under RCW 29.04.030 which makes no reference to setting aside an election.[31] Appellant relies on this court's holding in *Becker v. Pierce County*

[27]RCW 29.04.030 provides, in part, that an elector may file an affidavit with a justice or judge charging certain election frauds and errors. Such a charge may claim that "[t]he name of any person has been or is about to be wrongfully placed upon the ballots . . . ." RCW 29.04.030(3). As to time limits, the statute states, "An affidavit of an elector under subsections (1) and (3) of this section when relating to a general election must be filed with the appropriate court no later than three days following the official certification of the primary election returns and shall be heard and finally disposed of by the court not later than five days after the filing thereof. An affidavit of an elector under subsection (6) of this section shall be filed with the appropriate court no later than ten days following the issuance of a certificate of election." RCW 29.04.030 (final unnumbered paragraph).

[28]Appellant's Br. at 36.

[29]*Id.* at 36-37.

[30]RCW 29.04.030 (final unnumbered paragraph).

[31]Clerk's Papers at 37.

that the appropriate relief under RCW 29.04.030(4) is a court order directing a person charged under the section to " 'correct the error, desist from the wrongful act, or perform the [neglected] duty and to do as the court orders.' "[32]

Respondent Dumas did not cite RCW 29.04.030(4) in his petition, but he did ask the court to set aside the election of Appellant Frost.[33] In *Becker*, this court focused on the relief sought, that is, setting aside an election, to determine whether the action constituted an election contest under RCW 29.65.010.[34]

While Respondent does not cite a specific subsection of either RCW 29.65.010 or RCW 29.04.030, it is apparent from the facts stated in his petition that issuance of the certificate of election is the specific ground of his challenge.[35] Under this court's rules of procedure, "pleadings are primarily intended to give notice to the court and the opponent of the general nature of the claim asserted . . . ."[36] Although Respondent's petition did not cite specific subsections of the statute, sufficient facts and law were stated concerning the nature of the claim to bring the petition under the statute. Although the petition is not a model of pleading, it is nevertheless adequate so long as it is sufficient to satisfy necessary legal requirements.[37]

Under RCW 29.65.020, the affidavit charging an error in issuance of a certificate of election "must be filed with the appropriate court no later than ten days following the issuance of a certificate . . . ." The Benton County Auditor is-

---

[32]126 Wn.2d 11, 21, 890 P.2d 1055 (1995).

[33]Clerk's Papers at 251.

[34]126 Wn.2d at 20-21.

[35]Clerk's Papers at 249-50.

[36]*Lightner v. Balow*, 59 Wn.2d 856, 858, 370 P.2d 982 (1962).

[37]*Chen v. State*, 86 Wn. App. 183, 193, 937 P.2d 612, *review denied*, 133 Wn.2d 1020, 948 P.2d 387 (1997).

sued a certificate of election on November 19, 1997.[38] Respondent filed his petition and affidavit on November 26, 1997 within the ten-day limit.[39]

*ELIGIBILITY FOR OFFICE*

The unique facts in this case present a rather narrow question: *what is the proper designation and location of the residence of a candidate for the position of port commissioner when a political boundary line transects contiguous properties owned and physically occupied as a permanent residence by the candidate?*

■■ Election contests are governed by several general principles. Chief among them is the principle, long followed by this court, that the judiciary should "exercise restraint in interfering with the elective process which is reserved to the people in the state constitution."[40] Unless an election is clearly invalid, "when the people have spoken, their verdict should not be disturbed by the courts . . . ."[41] In adhering to this principle of judicial restraint, this court has adopted the rule that an "informality or irregularity" in an election which did not affect the result is not sufficient to invalidate the election.[42] Statutory provisions relating to conduct of an election, such as requirements for notice, have been held to be directory only, and even though not followed precisely, will not render an election void.[43] But provisions

[38]Clerk's Papers at 46, 244.

[39]*Id.* at 207.

[40]*McCormick v. Okanogan County*, 90 Wn.2d 71, 75, 578 P.2d 1303 (1978) (holding that a recall statement filed with an auditor was sufficient notwithstanding that it did not specify certain details required by the statute).

[41]*Murphy v. City of Spokane*, 64 Wash. 681, 684, 117 P. 476 (1911) (holding a bond election valid despite certain irregularities in conducting the election).

[42]*McCormick*, 90 Wn.2d at 75.

[43]*Murphy*, 64 Wash. at 684.

which affect the merits are mandatory, and, if not followed, will void an election.[44]

■ Statutory provisions regarding qualifications of candidates, such as a residence requirement, directly and substantively affect an election because they place restrictions upon who can be a candidate, and, consequently, are not mere technicalities. However, this court has stated the "general rule" that "election statutes are considered remedial and should be liberally construed."[45] In particular, statutes establishing qualifications for office are to be construed to "unfetter the process of election" rather than "curtail the freedom to stand for office."[46]

In *State ex rel. O'Connor v. Dubuque* this court declared, "[a] strong public policy exists in favor of eligibility for public office, and the constitution, where the language and context allows, should be construed so as to preserve this eligibility."[47] In holding unconstitutional an ordinance requiring candidates for a board which would draft a new city charter to be freeholders, this court stated, "A fundamental principle in our democracy is 'the people should choose whom they please to govern them' and 'this principle is undermined as much by limiting whom the people can select as by limiting the franchise itself.' "[48]

---

[44]*Id.* (citing GEORGE W. McCRARY, AMERICAN LAW OF ELECTIONS § 225 (Henry L. McCune ed., 4th ed. 1897)). *See also State ex rel. Lysons v. Ruff*, 4 Wash. 234, 240, 29 P. 999 (1892).

[45]*Gold Bar Citizens for Good Gov't v. Whalen*, 99 Wn.2d 724, 728, 665 P.2d 393 (1983) (holding that votes cast by nonresidents in an election for mayor were illegal votes).

[46]*State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 568, 413 P.2d 972 (1966).

[47]68 Wn.2d 553, 566, 413 P.2d 972 (1966) (holding that where a salary increase takes effect during the term for which a legislator is elected does not prevent the legislator from standing for election, since no part of the salary increase will be earned during the legislator's term). *See also State ex rel. Bickford v. Jacobson*, 16 Wn. App. 473, 558 P.2d 292 (1976), *review denied*, 88 Wn.2d 1011 (1977).

[48]*Sorenson v. City of Bellingham*, 80 Wn.2d 547, 552, 496 P.2d 512 (1972) (quoting *Powell v. McCormack*, 395 U.S. 486, 547, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)).

In *State ex rel. Weston v. Schragg*,[49] a county auditor refused to accept a declaration of candidacy from a person desiring to run for county treasurer. Construing both constitutional and statutory provisions to hold the candidate was entitled to file, this court stated:

> Since the right to participate in the government is the common right of all, it is the unqualified right of any eligible person within the state to aspire to any of these offices, and equally the unqualified right of the people of the state to choose from among those aspiring the persons who shall hold such offices. It must follow from these considerations that eligibility to an office in the state is to be presumed rather than to be denied, and must further follow that any doubt as to the eligibility of any person to hold an office must be resolved against the doubt.[50]

Other than these general principles governing election statutes and statutes regarding qualifications for office, we have found no Washington statutes nor cases relating to the issue of residency where the residential property of a candidate is transected by the line between two districts as under the facts of this case.

The statutory provision regarding the qualifications for port commissioners states: "Only a registered voter who resides in a commissioner district may be a candidate for, or hold office as, a commissioner of the commissioner district." RCW 53.12.010(1)(a).[51] The meaning of the word "resides" is a principal focus of the dispute in this case. Appellant Frost contends that residency is an expansive concept, relying upon cases defining residency in the

[49]158 Wash. 74, 291 P. 321 (1930).

[50]*Id.* at 78.

[51]It is noted that the indefinite article "a" precedes the phrase "commissioner district" the first time those words are used in the subsection. This contrasts with the specific language describing the residency requirement for county commissioners: "[T]he qualified electors of each county commissioner district, and they only, shall nominate from among their own number, candidates for the office of county commissioner of *such* commissioner district to be voted for at the following general election." RCW 36.32.040(1). (Emphasis added.)

context of service of process[52] and upon out-of-state cases defining the concept of curtilage in certain civil settings,[53] both factually distinguishable from the dispute in this case.

Respondent contends that the word "resides" should be narrowly interpreted to mean the *actual physical location of Appellant Frost's house on one of the three contiguous lots she owns.*[54]

The concept of residency arises in several contexts such as adoption, dissolution of marriage, service of process, and validity of wills, as well as voting and holding office.[55] The RESTATEMENT (SECOND) OF CONFLICT OF LAWS, states: "Residence is an ambiguous word whose meaning in a legal phrase must be determined in each case."[56] This court has observed that " '[e]ach of the terms "reside," "residing," "resident," and "residence" is elastic. To interpret the sense in which such a term is used, we should look to the object or purpose of the statute in which the term is employed.' "[57] Because the meaning of the word is to be derived from the applicable statute, Appellant Frost's reliance on service of process and curtilage cases is without merit.

In construing statutes in one context, this court has stated that the "spirit and intent of the statute should prevail over the literal letter of the law and . . . there should be made that interpretation which best advances the perceived legislative purpose."[58] In its memorandum decision in this case, the trial court found that the residence requirement for port commissioners existed to

---

[52]Appellant's Br. at 29-31.

[53]*Id.* at 26-28.

[54]Br. of Resp't Dumas at 8.

[55]RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 11, cmt a (1971).

[56]*Id.* § 11, cmt. k (1971).

[57]*Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991) (quoting *McGrath v. Stevenson*, 194 Wash. 160, 162, 77 P.2d 608 (1938)).

[58]*Wichert*, 117 Wn.2d at 151 (citing *In re R.*, 97 Wn.2d 182, 187, 641 P.2d 704 (1982); *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990)).

achieve "geographic balance" on the port commission.[59] Although the court did not expand on that concept, achieving "geographic balance" assumes, as does districting in the first place, that "geographic units reflect a common or group identity . . . ."[60] In holding that a one-year residence requirement for the office of city council member was constitutional, this court stated that the requirement allowed the candidate "to be exposed to the needs and problems of the people" of the particular city.[61]

The question arises whether, given the limited factual context presented by this case, the purpose of RCW 53.12.010(a) is served by a narrow construction of the word "resides." The trial court construed the word narrowly and held that Appellant Frost did not reside in Port of Kennewick Commissioner District Number One. The trial court found it significant that Appellant Frost's three contiguous residential lots were not legally consolidated, stating that the lots "represent legally separate and distinct parcels, not legally joined in any way to lot one [the lot on which Appellant Frost's house is located] and against which there exist no impediments to their separate and individual use, development and enjoyment."[62] The court cited no legal authority to support its attachment of significance to this fact.

Reliance on the absence of consolidation of contiguous properties is misplaced. The Benton County Assessor testified she did not think the three lots could ever be consolidated—even if Appellant Frost wanted to consolidate them—because the parcels lie on two sides of the section

---

[59]Clerk's Papers at 59.

[60]Lani Guinier, *Groups, Representation, and Race-Conscious Districting: A Case of the Emperor's Clothes*, 71 Tex. L. Rev. 1589, 1603 (1993). The idea that geography approximates political interests has feudal origins. *Id.*

[61]*Lawrence v. City of Issaquah*, 84 Wn.2d 146, 150, 524 P.2d 1347 (1974). *See also Fischnaller v. Thurston County*, 21 Wn. App. 280, 584 P.2d 483 (1978), *review denied*, 91 Wn.2d 1013 (1979).

[62]Clerk's Papers at 59.

line and lie in different plats.[63] Although not legally consolidated, the three lots do have only one owner—Appellant Frost. In findings of fact the court concluded that Appellant Frost treats the three lots as a "single parcel forming an enclosed, residential compound,"[64] a fact that diminishes the possibility she would use her three lots in three separate and distinct ways in the future.[65]

The trial court also found it significant that improvements (house, landscaping, swimming pool, paved driveway, underground sprinkler system) lie "almost entirely within Lot one" and "[b]eyond that area the property is maintained in its natural state of flora and fauna."[66] The court determined that the absence of improvements on the other two lots, combined with the three lots being legally separated, made Appellant Frost a resident only of voting precinct W2-P690, and, therefore, a resident of Port Commissioner District Number Two instead of District Number One.

The trial court, however, made a finding of fact that Appellant Frost purposely maintains lots five and six in their more natural state.[67] Hence the few improvements. Appellant did fence lots five and six with barbed wire and also

---

[63]Report of Proceedings at 140-41.

[64]Clerk's Papers at 25.

[65]Common ownership of separate parcels of land is significant in the law of eminent domain. If a city condemns part of an owner's property for public use, the owner would have the opportunity to prove that the condemned parcel is part of a single tract in order to receive just compensation. *State v. Wandermere Co.*, 89 Wn. App. 369, 377, 949 P.2d 392 (1997), *review denied*, 135 Wn.2d 1012, 960 P.2d 939 (1998). The "larger parcel test" requires unity of ownership, unity of use, and contiguity. *Doolittle v. City of Everett*, 114 Wn.2d 88, 94-95, 786 P.2d 253 (1990). In *Doolittle*, this court used the "larger parcel test" from the law of eminent domain to decide whether separate lots should be combined into one tract for a special tax assessment. *Id.* In *Caine-Grimshaw Co. v. White*, a company sought recovery by mechanic's lien for repairs on a house. 136 Wash. 98, 238 P. 980 (1925). The lien was filed not only against the house located on one lot, but against adjacent lots also owned by the owner of the house. This court stated, "The three lots are contiguous to each other and manifestly constitute a single ownership by appellants for home purposes." *Id.* at 100.

[66]Clerk's Papers at 59.

[67]*Id.* at 24. *See also* Report of Proceedings at 173, 332-33.

put in a single continuous sidewalk in front of all three lots.[68] The trial court's ruling implies that the presence of additional improvements may have provided reason to consider all three lots together as Appellant's residence. But the court did not elaborate further and cited no legal authority for that suggestion.

The trial court concluded that the purpose of the requirement that a port commissioner reside in the district from which the commissioner is nominated is to achieve geographic balance.[69] Since 1992, Appellant Frost has owned three contiguous lots, all of which are in the Canyon Lakes residential neighborhood.[70] At the time of the general election on November 4, 1997 when she was elected Port Commissioner for District Number One, she had been residing in that neighborhood for five years. The trial court found that when the Port of Kennewick Commission redrew district boundary lines in 1992, the Commission intended to include all of Canyon Lakes within one district, District Number One.[71] Under that finding, we can conclude the Commission satisfied the requirements of RCW 29.70-.100(4)(e) which states:

> To the extent feasible and if not inconsistent with the basic enabling legislation for the municipal corporation, county, or district, the district boundaries shall coincide with existing recognized natural boundaries and shall, to the extent possible, preserve *existing communities of related and mutual interest.*

(Emphasis added.)

In addition, the trial court found that Appellant Frost pays dues to the Canyon Lakes Home Owners Association.[72] She has also been a registered voter in precinct W2-P636

---

[68]Clerk's Papers at 24.

[69]*Id.* at 59, Mem. Decision.

[70]*Id.* at 21.

[71]*Id.* at 27.

[72]*Id.*

since 1993[73] and has voted regularly since that date.[74] Despite these ties to the Canyon Lakes community and her voter registration in precinct W2-P636, under the trial court's ruling she cannot hold the office of Port Commissioner in District Number One to which she was elected.

The justification for the residence requirement provided by the trial court—to achieve geographical balance—is diminished by the fact that in the general election voters in all precincts in the Port of Kennewick are able to vote for all commissioners and not just for candidates from their own districts. There was testimony the public was aware of the dispute about residency,[75] but despite that, Appellant Frost still won the election by a wide margin and with a majority in each precinct.[76] The result of the election supports a conclusion the voters did not question whether Appellant Frost could represent their interests as a Commissioner of the Port of Kennewick.

Through no fault of her own, Appellant Frost was registered in the wrong precinct because of the physical location of the address the City of Kennewick assigned to her residence. She did all the law required her to do: *register to vote* and *file a declaration of candidacy*. Under RCW 29.07.070(4),[77] when she registered to vote, she indicated her residence address as that assigned to her by the City of Kennewick, 4107 West 43rd Avenue, the permanent address at which she physically resides and maintains her abode. RCW 29.01.140 states: " 'Residence' for the purpose of registering and voting means a person's permanent address where [the person] physically resides and maintains [the person's] abode . . . ." Under RCW 29.15.010(1), a

---

[73]*Id.* at 25.

[74]*Id.* at 86.

[75]Report of Proceedings at 43.

[76]Clerk's Papers at 28.

[77]RCW 29.07.070 states in part: "Except as provided under RCW 29.07.260, an applicant for voter registration shall complete an application providing the following information concerning his or her qualifications as a voter in this state: . . . (4) The address of the applicant's residence for voting purposes . . . ."

candidate filing for office must state that the candidate "is a registered voter within the jurisdiction of the office for which [the candidate] is filing, and the address at which [the candidate] is registered . . . ." Appellant Frost met this requirement.

Even though the trial court concluded that the county auditor erred in issuing Appellant Frost a certificate of election, the county auditor fulfilled her statutory duty by comparing Appellant Frost's residence address with the precinct grid map she normally used and which was provided her by the City of Kennewick. RCW 29.15.025(2) states in part: "[T]he officer with whom declarations and affidavits of candidacy must be filed under this title shall review such declaration filed regarding compliance with this subsection." When Appellant Frost filed her declaration of candidacy, the location of her residence was questioned. Not only did the county auditor consult with her assistant who confirmed Appellant was in the right precinct,[78] but twice the Executive Director of the Port of Kennewick verified that Appellant Frost's residence address placed her in Commissioner District Number One.[79] The trial court found that, although the street address of Appellant Frost, from the maps available to the Benton County Auditor at the time, appeared to be situated within precinct W2-P636, an actual survey of the property showed that Appellant's house instead lies within precinct W2-P690.[80] That survey was not before the County Auditor.[81]

[78]Clerk's Papers at 239.

[79]*Id.* at 240-41. The Benton County Auditor testified that before the primary she received a letter from Wallace W. Hickerson, Appellant's opponent, stating that Appellant did not reside in District One. She further testified that her office contacted the Port District about the matter, checked the maps in the auditor's office, and "found that by all the tools that we use in the auditor's office that she [Appellant] was in the district." Report of Proceedings at 71.

[80]Clerk's Papers at 25-26.

[81]There was conflicting testimony whether Appellant Gagner (the Benton County Auditor) checked the location of the address utilizing solely the precinct map. When asked if she checked with the Benton County Assessor, Appellant Gagner testified she had not and was not required by law to do so. Report of

In *State ex rel. McCaffrey v. Superior Court*,[82] this court held that, because the county auditor is only an administrative officer "insofar as the filing of declarations of candidacy and the preparation of ballots are concerned," the auditor could not determine a complex question concerning eligibility of a candidate.[83] In *State ex rel. McAulay v. Reeves*,[84] this court found that the county auditor had no power

> to determine the eligibility of candidates as to whose eligibility a colorable question can be raised, and to determine it according to . . . [the county auditor's] individual findings of fact, with the added danger that, in times of stress, . . . [the county auditor's] determination might be influenced by . . . [the county auditor's] prejudices or by partisan considerations . . . . The right to exercise a power so sovereign in its nature as the judicial power cannot be successfully spelled out by mere inference or conferred by judicial decision.[85]

The Benton County Auditor could not have rejected the declaration of candidacy of Appellant Frost based upon any extrinsic factual information or interpretations of statutory provisions, but was required to rely upon official records.[86]

In *State ex rel. Hubbard v. Lindsay*[87] this court held that a county auditor could not make an independent investiga-

---

Proceedings at 221. The Benton County Assessor testified the auditor did sometimes consult that office about the actual physical location of a candidate's address. *Id.* at 354. The assessor further testified that the county auditor did come to her office to check on the location of Appellant Frost's address. They checked a "hard copy map" (a plat map) and a Geographical Information Systems (G.I.S.) map and located the address in Section 16, in Port Commissioner District Two. *Id.* at 355. However, Appellant Frost's opponent, Mr. Hickerson, testified that when he checked with the county assessor's office for the address of Appellant Frost he was informed the address was 4103 West 43rd Avenue, an address that placed her residence in Commissioner District One. *Id.* at 292-93.

[82]20 Wn.2d 704, 149 P.2d 156 (1944).

[83]*Id.* at 709.

[84]196 Wash. 1, 81 P.2d 860 (1938).

[85]*Id.* at 7-8. *See also* Br. of Amicus Curiae Secretary of State Ralph Munro at 7-8.

[86]*See Fischnaller v. Thurston County*, 21 Wn. App. 280, 285, 584 P.2d 483 (1978), *review denied*, 91 Wn.2d 1013, (1979).

[87]52 Wn.2d 397, 326 P.2d 47 (1958).

tion and go beyond the registration records to determine whether a petition to merge a part of one fire district with another had the sufficient number of signers required by statute.[88] The statute specified precinct registration records. The legislature did not authorize the auditor to contradict those records by personal visits.[89]

Implicit in the trial court's decision in this case is that the street grid map used by the City of Kennewick to assign addresses is the controlling map for the registration of voters, despite the fact the map used by the county auditor was furnished by the city.[90] During the hearing, Appellant Gagner (the Benton County Auditor) was shown a plat map and testified that she does not use it to assign a precinct, but utilizes instead the precinct map supplied by the city.[91] RCW 29.15.026(1) states: "The legislative authority of each county and each city, town and special purpose district which lies entirely within the county shall provide the county auditor accurate information describing its geographical boundaries and boundaries of its director, council, or commissioner districts and shall ensure that the information provided to the auditor is kept current." There is no statutory basis for the court to hold that one map controls over another. The county auditor relied on the map furnished by the City of Kennewick.

The final vote count in the election was 14,421 for Appellant Frost and 9,496 for her opponent.[92] Appellant Frost won a majority in each precinct in the general election.[93] The voters of the Port of Kennewick clearly expressed their preference. Appellant's opponent in the general election,

---

[88]*Id.* at 406-07.

[89]*Id.* at 407.

[90]Clerk's Papers at 25. Benton County Election Supervisor Susie Christopher testified she does not use a plat map to assign precincts and does not use section lines. Report of Proceedings at 213-14, 216.

[91]*Id.* at 211, 214.

[92]Clerk's Papers at 241.

[93]*Id.* at 28.

Wallace W. Hickerson, testified the title report for Appellant's property listed her address as 4103 West 43rd Avenue, the same address he obtained from the county assessor's rolls.[94] However, he conceded that address is located within precinct W2-P636 and Port Commissioner District One.[95]

Because of the strong public policy in favor of eligibility for office, the statutory authority of the county auditor, and the findings of fact that Appellant Frost relied in good faith on the county auditor's assignment of precinct and that Appellant Frost treats her three adjacent lots as one property, a "residential compound," we conclude that the election of Appellant Sue Frost as Commissioner of Port District Number One of the Port of Kennewick was valid and should not be annulled and set aside.

## ATTORNEY FEES

Appellant Frost has requested attorney fees and expenses under RAP 18 and RCW 29.65.055 which provides for costs in election contests.[96] RCW 29.65.055 states: "If the proceedings are dismissed for insufficiency, want of prosecution, or the election is by the court confirmed, judgment shall be rendered against the party contesting such election for costs, in favor of the party charged with error or omission." Costs are defined under RCW 4.84.010 as including statutory attorney fees and expenses such as filing fees and fees for service of process. However, RCW 29.65.010 makes no mention of attorney fees, but refers only to costs. "[T]he general rule is that counsel fees are not costs either in suits in equity or actions at law."[97] Consequently, Appellant Frost, as the prevailing party, is

---

[94]Report of Proceedings at 292-93.

[95]*Id.* at 293. This address, 4103 West 43rd Avenue, was also the one referred to in Respondent Dumas' original petition. Clerk's Papers at 250.

[96]Appellant's Br. at 39.

[97]*State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 102, 111 P.2d 612 (1941).

entitled only to costs under RCW 4.84.010 and RCW 29.65.010.[98]

## SUMMARY AND CONCLUSIONS

The Benton County Superior Court ordered the election of Appellant Sue Frost as Commissioner of Port District Number One of the Port of Kennewick annulled and set aside, finding that she did not physically reside in District Number One as required by the statute. As a result, the trial court concluded as a matter of law that Appellant Bobbie Gagner, as Benton County Auditor, erroneously issued a certificate of election to Appellant Frost. The trial court determined that Appellant Frost resided in Port District Number Two and did not reside in District Number One because the three contiguous lots she owns are not legally consolidated and two of her three lots (those situated in District Number One) have few improvements. We do not agree with the conclusion of law reached by the trial court.

Courts are to exercise restraint in election contests, and election statutes are to be liberally construed. In addition to these general principles, there is a strong public policy which favors eligibility for public office.

Among its findings of fact, the trial court determined that Appellant Frost relied in good faith on the county auditor's assignment of precinct which placed Appellant Frost in District Number One. In making the assignment, the county auditor fulfilled her statutory duty. The trial court also found that Appellant Frost treats her three contiguous lots as one property, a "residential compound."

Considering these facts and the strong public policy in favor of eligibility for office, we conclude the trial court was

---

[98]The trial court permitted Appellant Frost to intervene. Clerk's Papers at 247-48. Under CR 24(b)(2), a court may permit intervention "[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." Appellant Frost subsequently appealed the trial court's order to this court and is properly before this court as a party. "It is generally said that an intervenor is treated as an original party." 3A Lewis H. Orland & Karl B. Tegland, Washington Practice: Rules Practice 612 (4th ed. 1992).

not correct in ordering the election of Appellant Frost annulled and set aside.

We reverse the order of the Benton County Superior Court which annulled and set aside the election of Appellant Sue Frost to the office of Port Commissioner of District Number One for the Port of Kennewick.

GUY, C.J., DURHAM, JOHNSON, MADSEN, TALMADGE, and SANDERS, JJ., and DOLLIVER and SEINFELD, JJ. Pro Tem., concur.

Reconsideration denied April 6, 1999.