Honorable Pam Roach State Senator, 31st District P.O. Box 40431 Olympia, WA 98504-0431
Dear Senator Roach:
By letter previously acknowledged, you have requested our opinion on the following question:
When a pesticide covered under RCW 17.21 is being applied to lumber that is owned by another, is it being applied to the "land" of another, as defined in RCW 17.21.020, such that a commercial applicator license is required? Or is a private-commercial applicator license sufficient?
BRIEF ANSWER
If the lumber is located on property that is not owned or rented by the applicator, and the pesticide is applied pursuant to a regular or principal occupation of the applicator, then a commercial pesticide applicator license is required. If the lumber is located on property that is owned or rented by the applicator, then the application does not occur on the "land" of another, and a commercial pesticide applicator license is not required. Under such circumstances, a private-commercial applicator license would be sufficient. The determining factors in the analysis of whether a commercial pesticide applicator license is required are the ownership or control of the land on which the pesticide is to be applied and whether the application of the pesticide is commercial.
ANALYSIS
RCW 17.21 establishes a licensure program for pesticide applicators. In enacting this statute, the Legislature specifically called attention to the health and welfare implications of pesticide use, finding that: "The application and the control of the use of various pesticides is [original page2] important and vital to the maintenance of a high level of public health and welfare both immediate and future, and is hereby declared to be affected with the public interest." RCW17.21.010.
Commercial pesticide applicators[1] are but one category of certified applicators who must be licensed under RCW 17.21. Others include commercial pesticide operators, private-commercial applicators, private applicators, demonstration and research applicators, limited private applicators, rancher private applicators, and public operators. In every case, applicators and operators are required to use care in the application of pesticides,[2] evidencing the Legislature's concern with the risks inherent in the use of pesticides.
RCW 17.21.070 establishes the requirement for commercial pesticide applicator licenses. For ease of reference, that section is set forth in full below:
 It shall be unlawful for any person to engage in the business[3] of applying pesticides to the land of another without a commercial pesticide applicator license. Application for a commercial applicator license shall be accompanied by a fee of one hundred seventy dollars and in addition a fee of twenty dollars for each apparatus, exclusive of one, used by the applicant in the application of pesticides: PROVIDED, That the provisions of this section shall not apply to any person employed only to operate any apparatus used for the application of any pesticide, and in which such person has no financial interest or other control over such apparatus other than its day to day mechanical operation for the purpose of applying any pesticide.
Thus, one who commercially applies pesticides to the "land of another"[4] must obtain a commercial pesticide applicator license. By contrast, one who applies pesticides "on lands owned or rented by the applicator or the applicator's employer" (for purposes other than the production of any agricultural commodity) must obtain only a private-commercial applicator license. RCW17.21.020(37).
[original page 3] As can be seen, what distinguishes the commercial pesticide applicator license requirement from the private-commercial applicator license requirement is the business context of the application, and the ownership or control of the land on which the use or supervision of the pesticide occurs: When one commercially uses or supervises the use of pesticides on land that is neither owned nor rented by the applicator or the applicator's employer, a commercial license is required.
From a licensure policy standpoint, there is logic to the distinction between lands owned or rented by the applicator or its employer, and those that are not. In the former case, the applicator or its employer can fairly be assigned some measure of risk to itself with respect to the use of pesticides. Moreover, one who owns or rents land generally can control access to it and thereby exercise a greater measure of control over the risk of exposure to unaware persons than would be the case of an applicator who does not own or rent, or whose employer does not own or rent, the land on which pesticides are being applied.[5]
Likewise, we do not think that the definition of "land" by itself distinguishes the commercial pesticide applicator license requirement from the private-commercial applicator license requirement. The definitions of "commercial pesticide applicator" and "private-commercial applicator" both include the concept of the use or supervision of pesticides on "lands." Because there is only one definition of "land" in RCW 17.21, we must give it the same meaning when used to define "commercial pesticide applicator" and "private-commercial applicator."
Moreover, we do not think that a licensure distinction based upon the definition of "land" would necessarily serve the Legislature's policy objective of protecting the public health and welfare. As currently defined, "land" seems all encompassing — including "all land and water areas, including airspace" as well as "all plants, animals, structures, buildings, devices, and contrivances, appurtenant to or situated on, fixed or mobile, including any used for transportation." RCW 17.21.020(27) (emphasis added). The breadth of this definition — and its centrality to the requirement for licensure — reflects the Legislature's view that pesticides are potentially dangerous regardless of where they are applied. The risk that a given pesticide poses to humans, for example, should not be materially different when the pesticide is applied to a stack of lumber rather than when applied to a shed, for example, all other things being equal.
Although the legislative history of the addition of the definition of "land" to the pesticide statute is scant, what evidence there is lends support to the notion that "land" does not exclude personal property such as lumber. Meeting minutes of the Pesticide Advisory Board reflect that body's understanding that "land" was intended to be broad and inclusive. In a discussion of what was to become the 1967 amendatory legislation, the Pesticide Advisory Board indicated that:
 [original page 4] The Board feels that this definition of land is inclusive and broadens the scope of the law. Les Mills asked why air space is mentioned in this definition. Air space in the definition is intended to cover fumigation for structural pests and fogging for mosquitoes. These two types of application place the pesticide into the air rather than onto ground or buildings.
Pesticide Advisory Board Minutes (Nov. 15, 1966), at 1-2. Cf.State ex rel. Pub. Util. Dist. 1 of Skagit Cy. v. Wylie,28 Wn.2d 113, 127, 182 P.2d 706 (1947) (in statutory and constitutional construction, antecedent mischief may be considered, and also history and circumstances of enactment).
Moreover, the 1967 amendatory legislation generally broadened the 1961 act's application. For example, that legislation deleted "agricultural" from the phrase "agricultural pesticide" and thus expanded then-existing law to cover all pesticides. The 1967 legislation also made it unlawful for an employee of a pesticide applicator to apply pesticides without a license, extended the act to manually operated apparatuses, and added grounds for denial, suspension, or revocation of licenses, among other things. Thus, in the context of the Legislature's effort to make pesticide regulation more comprehensive, a broad reading of "land" makes more sense, in our view, than a narrower one which excludes some indefinite universe of personal property or objects such as lumber.[6] See Dumas v. Gagner, 137 Wn.2d 268,286, 971 P.2d 17, reconsideration denied (1999) (in construing statutes, spirit and intent of statute should prevail over literal letter of law, and there should be made that interpretation which best advances perceived legislative purpose).
The nature of the statutory exemptions reinforces the Legislature's licensure policy distinction based on the ownership or control of lands and the business context. For example, the licensure requirements do not apply to persons who apply pesticides as an incidental part of their business (RCW17.21.200(4)), to those who conduct grounds maintenance and apply pesticides on an occasional basis not amounting to a regular occupation (RCW 17.21.200(3)), or to farmers who apply pesticides without compensation on an occasional basis not amounting to a principal or regular occupation, even if applied on the "land" of another person. RCW 17.21.200(2). None of these exemptions attempt to draw distinctions based upon what may or may not be situated on "land."
While the definition of "land" is broad, the commercial pesticide applicator license requirement does not extend to the commercial application of pesticides on any and all land. Rather, the requirement applies to the commercial application of pesticide to the "land of another." As noted above, this would not include the application of pesticide to personal [originalpage 5] property situated on land owned or rented by the applicator. In such a case, a private-commercial applicator license would be sufficient.[7]
 CONCLUSION
A person who commercially uses or supervises the use of pesticides on lumber that is owned by another, and which is located on property owned by someone other than the applicator or his or her employer, must obtain a commercial pesticide applicator license. If the lumber is located on property that is owned or rented by the applicator, then the application does not occur on the "land" of another and a commercial pesticide applicator license is not required.[8] In such a case, a private-commercial applicator license would be sufficient. Whether a commercial pesticide applicator license is required, as opposed to a private-commercial applicator license, depends upon whether the land upon which the pesticide is to be applied is owned or rented by the applicator or its employer, and whether the application of the pesticide is commercial; the licensure distinction does not depend upon the definition of "land."
We trust the foregoing will prove useful to you.
Sincerely,
 ROB MCKENNA Attorney General
 ROBERT J. FALLIS Assistant Attorney General
[1] The statutory definitions of the terms discussed herein are set forth in the Appendix to this opinion.
[2] See RCW 17.21.150 (establishing prohibited practices which include "operat[ing] in a faulty, careless, or negligent manner" (RCW 17.21.150(4)), and "not [being] qualified to perform the type of pest control under the conditions and in the locality in which [the applicator or operator] operates or has operated" (RCW 17.21.150(11)).
[3] "Engage in business" is defined to mean "any application of pesticides by any person upon lands or crops of another." RCW17.21.020(15).
[4] "Land" means all land and water areas, including airspace and all plants, animals, structures, buildings, devices, and contrivances, appurtenant to or situated on, fixed or mobile, including any used for transportation. RCW 17.21.020(27). The original 1961 pesticide act did not contain a distinction of "land." The definition was added in 1967 and has never been amended. See Laws of 1967, ch. 177, § 2. An identical definition of "land" is contained in the Washington Pesticide Control Act. See RCW 15.58.030(24).
[5] The fact that commercial pesticide applicators potentially pose a greater risk to others is reflected in the heightened recertification requirements applicable to the former. See RCW17.21.128.
[6] In addition to the policy disconnect that a narrow reading of "land" would cause, under such a reading we would be hard pressed to ascertain the scope of those things to be excluded from the definition. If "land" does not include lumber, then does it also exclude sawdust piles? What about hay bales? And, what about partially or completely underground storage areas, for example? We think it unlikely that the Legislature intended to adopt a definition that would result in such ad hoc and potentially expansive gaps in the regulatory program. Cf.State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (in construing statute, reading that results in absurd results must be avoided because it will not be presumed that Legislature intended absurd results).
[7] Whatever policy basis there may be to argue that the commercial application of pesticides should trigger a requirement for a commercial pesticide applicator license regardless of upon whose land the pesticides are applied, as written, the statute provides no legal basis for reaching such a result.
[8] While we recognize that the broad statutory definition of "land" includes personal property (such as lumber) that is "appurtenant to or situated on" land, we do not read the statute so broadly as to define lumber as "land" for all purposes, such that the ownership of the lumber, rather than ownership of the underlying land, would determine whether a commercial applicator license is required. The statutory scheme is to tie the licensing requirement to the ownership of the land on which pesticides are applied, even where the application is confined to personal property appurtenant to or situated on that land.