[No. 69048-1. En Banc.]
Argued March 20, 2000. Decided April 20, 2000.
*In the Matter of the Contested Election of* GARY L. SCHOESSLER, *Appellant.*

*Foreman, Arch, Dodge & Volyn, P.S.,* by *Robert Gray Dodge,* for appellant.

*Russell J. Speidel;* and *Jeffers, Danielson, Sonn & Aylward, P.S.,* by *James M. Danielson* and *Kari D. Kube,* for respondent.

SMITH, J. — Appellant Gary L. Schoessler seeks direct review of a decision of the Chelan County Superior Court which annulled and set aside his election as mayor of the City of Wenatchee. The trial court found Appellant was not eligible to hold that elective office because he did not satisfy the one-year residence requirement of RCW 35A.12.030. We granted direct review. We affirm.

## QUESTION PRESENTED

The question presented in this case is whether Appellant Gary L. Schoessler satisfied the one-year residence requirement of RCW 35A.12.030 for eligibility to hold elective office as mayor of the City of Wenatchee, Washington.

## STATEMENT OF FACTS

On July 26, 1999, Appellant Gary L. Schoessler filed a

"Declaration of Candidacy" for mayor of the City of Wenatchee, a photocopy of which follows:[1]

FILING DATA . FOR OFFICE USE ONLY 61774

Date/Time ___ Fee Paid $ 280 File No. 33

☑ Check ☐ Other Office
☐ Cash ☐ Non. Person Clerk/Cashier initials Code.

## DECLARATION OF CANDIDACY

1. I, GARY SCHOESSLER _ am a registered voter residing at:

2. 611 N. WENATCHEE AVE _ 509-667-8103
620 S. Wilson _
WENATCHEE _ CHELAN _ . WA 98801

and at the time of filing this declaration, I am legally qualified to assume office if elected.

3. I declare myself as a candidate for nomination to the office of:

MAYOR FOR THE City OF WENATCHEE _
City OF WENATCHEE _

4. For the following term of office:
☒ a full term or a full term and a short term, or
☐ an unexpired term

5. This office is:
☒ Nonpartisan, or
☐ Partisan, and I am: ☐ a candidate of the _____ party, or
☐ an independent candidate nominated pursuant to chapter 29.24 RCW.

6. Filing Fee (Check one):
☐ There is no filing fee because the office has no fixed annual salary, or
☐ I am submitting a filing fee of $10 because the fixed annual salary of the office being sought is $1,000 or less, or
☒ I am submitting a filing fee of $ 280 _, an amount equal to 1% of the annual salary, or
☐ I am without sufficient assets or income to pay the filing fee required by law and I have attached a nominating petition in lieu of this fee, pursuant to RCW 29.15.050.

7. Please print my name on the ballot exactly as follows: Gary Schoessler

I declare that this information is, to the best of my knowledge, true. I also swear, or affirm, that I will support the Constitution and laws of the United States and the Constitution and laws of the State of Washington.

8. Sign Here X _____

Candidate: Return all copies of this declaration to your Elections Dept.
Distribution by Elections Dept: White—County; Yellow—POC; Pink—Candidate

[1]Clerk's Papers at 107. Appellant claims 509-667-8103 is his personal telephone number at 611 North Wenatchee Avenue in Wenatchee. Dep. Upon Oral Examination of Gary L. Schoessler at 36-37, December 23, 1999.

On November 2, 1999, Appellant was elected mayor of the City of Wenatchee.[2] He was issued a certificate of election on November 23, 1999 by Evelyn L. Arnold, Chelan County Auditor.[3] On December 3, 1999, Dr. Sanford W. Brown and Reverend Kelvin B. Groseclose, registered voters in the City of Wenatchee, filed in the Chelan County Superior Court an affidavit of error or omission under RCW 29.65.020 and a petition to contest the right of Appellant to be issued a certificate of election.[4] They claimed he was not eligible to hold elective office as mayor of the City of Wenatchee because he did not satisfy the one-year residence requirement of RCW 35A.12.030.[5]

On December 27 and 28, 1999, the Honorable John E. Bridges presided over a hearing pursuant to chapter 29.65 RCW to determine whether to confirm or to annul and set aside the election of Appellant as mayor of the City of Wenatchee.[6] Appellant's business partner, Shawn Osborn, testified on direct examination concerning Appellant's claim of residence at their business address:

Q (By Mr. Foreman) Did you ever in the last year see Gary Schoessler sleeping in the server room [at 611 North Wenatchee Avenue in Wenatchee, Washington]?

A I never actually saw him sleeping but—

MR. DANIELSON: Objection to anything further as not responsive.

THE COURT: Sustained.

. . . .

Q (By Mr. Foreman) What did you observe about the futon in the server room?

---

[2]Clerk's Papers at 78.

[3]*Id.* at 38.

[4]*Id.* at 104-32.

[5]*Id.* at 104, Aff. of Error or Omission of Electors Sanford W. Brown and Kelvin B. Groseclose (RCW 29.65.020).

[6]*Id.* at 8.

A I know there was a—I guess it was called a futon or bed roll or whatever it was in the server room.

Q What did you observe when you came to work early in the morning?

A Several times I came in about 7:00 or 7:30 or so and, oh, maybe 10 or 15 minutes later Gary came out of the server room and looked like he was pretty well tired or just woke up.[7]

. . . .

On December 28, 1999, Judge Bridges rendered an oral decision and on January 7, 2000 filed the following findings of fact and conclusions of law (quoted in their entirety):

## FINDINGS OF FACT

1. Up until July 1999, the residential phone records of Gary Schoessler ("Mr. Schoessler") were at 3496 Marlette Place, Malaga, Washington.

2. Up until July 1999, the cell phone bills addressed to Mr. Schoessler went to 3496 Marlette Place, Malaga, Washington.

3. The electric utility bills from the Chelan County Public Utility District No. 1 ("Chelan County P.U.D.") billed to the name of Mr. Schoessler were addressed to four different locations: 611 North Wenatchee Avenue, Wenatchee, Washington, 3496 Marlette Place, Malaga, Washington, 1350 D Brown Street, Wenatchee, Washington (commencing in late July 1999), and 1808 Rogers Drive, Wenatchee, Washington (this latter address being outside the city limits of Wenatchee and the place where the Mayor's girlfriend resides.)

4. The records of the Department of Licensing of the State of Washington reflect the address of Mr. Schoessler as 3496 Marlette Place, Malaga, Washington, until July 14, 1999.

5. The drivers [sic] license of Mr. Schoessler was renewed by Mr. Schoessler on April 20, 1999, with the renewal address of

---

[7] Report of Proceedings (Dec. 28, 1999) at 275. Appellant's business, CRCW-NET (formerly Computer Resource Center) is located at 611 North Wenatchee Avenue, Wenatchee, Washington.

3496 Marlette Place, Malaga, Washington. The drivers [sic] license of Mr. Schoessler was changed on July 14, 1999, to reflect the address of 611 North Wenatchee Avenue, Wenatchee, Washington.

6. The voter registration of Mr. Schoessler was in Malaga, Washington, until July 14, 1999, when it was changed by Mr. Schoessler to the address of 620 S. Wilson Street, Wenatchee, Washington. The voter registration of Mr. Schoessler was thereafter changed by Mr. Schoessler on July 28, 1999, to 611 North Wenatchee Avenue, Wenatchee, Washington.

7. Mr. Schoessler was stopped for speeding by Chelan County Deputy Sheriff Ken Varichak on Friday, April 2, 1999, at 6:42 p.m. while southbound on the Malaga highway heading toward Malaga at milepost 4.5. Mr. Schoessler stated to Deputy Sheriff Varichak that his address on April 2, 1999, was 3496 Marlette Place, Malaga, Washington.

8. On December 4, 1998, a son of Mr. Schoessler, namely Andrew Schoessler, had contact with Chelan County Deputy Sheriff Eric Collier. At the time of the December 1998 contact, Andrew Schoessler reported to Deputy Sheriff Collier that his address was 3496 Marlette Place, Malaga, Washington.

9. On March 25, 1999, a letter was received by the Chelan County Prosecuting Attorney from Gary Schoessler in connection with the December 4, 1998 incident. The letter from Gary Schoessler refers to 3496 Marlette Place, Malaga, Washington, as "our home". [sic] Wherein it states: "On weekends Andy is at our home by 11:00 p.m."

10. On June 13, 1999, Andrew Schoessler had contact with the Wenatchee Police Department. Andrew Schoessler stated to Officer Paul Hughes of the Wenatchee Police Department that both his address and his father's address were 3496 Marlette Place, Malaga, Washington.

11. On June 14, 1999, the father, Mr. Schoessler, filed a complaint with Officer Paul Hughes of the Wenatchee Police Department. During the filing of this complaint, Mr. Schoessler told Officer Hughes that his address was 3496 Marlette Place, Malaga, Washington.

12. The 1998 U.S. Individual Income Tax Return Form 1040

of Mr. Schoessler, which was filed in 1999, states the address of Mr. Schoessler is 3496 Marlette Place, Malaga, Washington.

13. The automobile insurance policy records from the Country Companies applicable to Mr. Schoessler indicate the address of Mr. Schoessler is 3496 Marlette Place, Malaga, Washington.

14. The homeowners [sic] insurance policy records from the Country Companies applicable to Mr. Schoessler indicate the address of Mr. Schoessler is 3496 Marlette Place, Malaga, Washington.

15. No change of address has been made by Mr. Schoessler with the post office in Malaga to change his mailing address from 3496 Marlette Place, Malaga, Washington.

16. The Declaration of Candidacy of Mr. Schoessler for the position of Mayor of the City of Wenatchee was filed by Mr. Schoessler with the Chelan County Auditor on July 26, 1999.

17. The Declaration of Candidacy of Mr. Schoessler indicates he lived interchangeably at 620 S. Wilson Street, Wenatchee, Washington, and 611 North Wenatchee Avenue, Wenatchee, Washington.

18. Mr. Schoessler learned of the one year residency requirement for the office of Mayor of the City of Wenatchee when he received the candidacy packet in July 1999.

19. In 1989 Mr. Schoessler, his wife, Jo Schoessler, and his son (her stepson), Andrew Schoessler, moved and established their residence in Malaga, Washington.

20. Malaga, Washington, is approximately eight miles outside the city limits of Wenatchee, Washington.

21. Only July 4, 1998, Mr. Schoessler took from his Malaga residence a duffel bag of clothes and a toiletries bag and began sleeping on his boat at Lake Chelan, Washington, until September 1998.

22. The documentary evidence and disinterested third party testimony is that Mr. Schoessler lived at 3496 Marlette Place in Malaga, Washington, from September 1998 until late July 1999.

23. Mr. Schoessler claims he lived from September 1998

until late July 1999 at 611 North Wenatchee Avenue, Wenatchee, Washington (the location of his business), in the computer file server room.

24. The business of Mr. Schoessler is known as CRCWNET, formerly known as the Computer Resource Center.

25. The dimensions of the computer file server room are 15 feet by 20 feet.

26. The business partner of Mr. Schoessler, namely, Shawn Osborn, witnessed only one day when Mr. Schoessler came out of the computer file server room in the morning looking like he (Mr. Schoessler) had been sleeping there.

27. The [c]ourt would expect that Shawn Osborn, the business partner of Mr. Schoessler, would have seen more than one day during a period of 10 months of claimed residency when Mr. Schoessler was observed to have been sleeping on the premises.

28. Mr. Jack Whiteman, landlord of the Computer Resource Center, was not aware Mr. Schoessler was living at 611 North Wenatchee Avenue.

29. The commercial landlord, Mr. Whiteman, never saw any conduct of Mr. Schoessler that would indicate Mr. Schoessler was living at 611 North Wenatchee Avenue.

30. The commercial landlord, Mr. Whiteman, was present at 611 North Wenatchee Avenue from 7:30 a.m. until 11:30 a.m. and from 1:30 p.m. to 2:00 p.m. Monday through Friday from November 2, 1998, to the present date.

31. The commercial landlord, Mr. Whiteman, shares a common area with the CRCWNET business of Mr. Schoessler at 611 North Wenatchee Avenue, including refrigerator, microwave, bathroom, and janitor's mop sink facilities.

32. Mr. Jerry Isenhart was called on the telephone by Mr. Schoessler on numerous occasions during January 1999 through May 1999 all as summarized on Page 2 of Exhibit 3 and itemized in more detail in the Malaga residence phone bill records of Exhibit 2. For example, there was a telephone call made by Mr. Schoessler to Jerry Isenhart on Wednesday, February 24, 1999, placed at 10:04 p.m. lasting 122 minutes. For

further example, there was a telephone call made by Mr. Schoessler to Jerry Isenhart on Tuesday, April 20, 1999, at 10:20 p.m. lasting 44 minutes. These were two of many telephone calls made by Mr. Schoessler to Jerry Isenhart. All of these calls were made from the Malaga residence phone of 3496 Marlette Place. That phone has an unlisted number which has been redacted from the public record in this case.

33. The telephone calls made by Mr. Schoessler to Jerry Isenhart were to Mr. Isenhart's Chelan phone number (509) 682-5921.

34. Between January 1999 and May 1999, when Mr. Schoessler would telephone Mr. Isenhart, Mr. Schoessler would state he was calling Mr. Isenhart "from home" or from his "home in Malaga."

35. Mr. Jim Martin was negotiating business deals with Mr. Schoessler between February 1999 and June 1999, and during this time Mr. Schoessler referred to his "home in Malaga."

36. Mr. Schoessler stated to Mr. Martin during this period between February 1999 and June 1999, on one particular day, that Mr. Schoessler was ill, that he was going to his home in Malaga, and that Mr. Martin could reach Mr. Schoessler there. Mr. Martin thereafter on that same day called Mr. Schoessler at the unlisted Malaga residence phone number, whereupon Mr. Schoessler's son, Andrew Schoessler, answered the phone, and whereupon Mr. Schoessler then personally took the call from Mr. Martin.

37. On July 4, 1998, when Mr. Schoessler removed a duffel bag of clothes and a toiletries bag from 3496 Marlette Place, Malaga, Washington, everything of value to Mr. Schoessler remained at the Malaga home, including his clothes, dishes, furniture, family antiques from the mother of Mr. Schoessler, vehicles, equipment, tools, and Mr. Schoessler's son, Andrew, who remained in Malaga.

38. Andrew Schoessler, son of Mr. Schoessler, testified he was not sure where his father was living from September 1998 until July 1999.

39. In July 1999, Mr. Schoessler decided to run for Mayor and at that point, for the first time, Mr. Schoessler makes clear an intention to reside in Wenatchee, Washington.

40. In July 1999, Mr. Schoessler asked his former wife, Ms. Patti Schoessler, who resides at 32 Harrison Street in the City of Wenatchee, if he could use her address because he needed to be a resident of Wenatchee for at least one year.

41. Mr. Schoessler asked Ms. Patti Schoessler to falsify information about his residency.

42. In December 1999, shortly before the trial herein, Mr. Schoessler told Ms. Patti Schoessler he would quit, take their son, Andrew, and move to Arizona. Ms. Patti Schoessler considered this a threat to her as a potential witness.

43. Andrew Schoessler was born on October 19, 1981, and is the child of Mr. Schoessler and his former wife, Ms. Patti Schoessler.

44. Mr. Schoessler had custody of Andrew Schoessler during all times relevant to these proceedings until Andrew attained 18 years of age on October 19, 1999.

45. Cameron Schoessler is another minor child of Mr. Schoessler and his former wife, Ms. Patti Schoessler.

46. Ms. Patti Schoessler has had and continues to have custody of Cameron Schoessler during all times relevant to these proceedings.

47. The Affidavit of Gary Schoessler, signed under oath by Mr. Schoessler on December 9, 1999, and filed herein as Exhibit 18, states as follows in paragraph 2 thereof:

In November 1998, I moved into a house owned by my brother-in-law, Michael D. Wood, located at 620 South Wilson in Wenatchee. I lived in that house until August 2, 1999, when I moved into an apartment located at 1350 Brown Street in Wenatchee.

48. Notwithstanding the foregoing Affidavit of Gary Schoessler, the Court finds by his own admission at trial that Mr. Schoessler never lived at 620 South Wilson Street in Wenatchee.

49. Mr. Schoessler kept some of his clothes at work (611 North Wenatchee Avenue, Wenatchee) and some of his clothes in his car and some of his clothes at 3496 Marlette Place in Malaga.

50. Mr. Tim Finnigan, a Malaga neighbor of Mr. Schoessler, saw Mr. Schoessler and Mr. Schoessler's car at Mr. Schoessler's home in Malaga as late as February 1999. Mr. Finnigan understood from his observations that Mr. Schoessler was at that time residing at 3496 Marlette Place, Malaga, Washington.

51. Ms. Joyce Davis resides at 3495 Marlette Place in Malaga, Washington, in a home directly across the street from Mr. Schoessler's home at 3496 Marlette Place, Malaga, Washington.

52. During the period from November 2, 1998, until July 1999, Ms. Joyce Davis, a neighbor of Mr. Schoessler, saw Mr. Schoessler in his vehicle arriving at his home at 3496 Marlette Place in Malaga, in the evenings.

53. During the period from November 2, 1998 until July 1999, Ms. Joyce Davis would sit in her living room until 2:30 a.m., Monday through Thursday, at which time she would go pick up her husband at work, returning to her home on Marlette Place in Malaga at approximately 3:00 a.m.

54. During the period from November 2, 1998, until July 1999, Ms. Joyce Davis had daily opportunity to observe the presence of the vehicle of Mr. Schoessler in the driveway at 3496 Marlette Place, Malaga, Washington.

55. Mr. Marcus Knemeyer, a neighbor of Mr. Schoessler, saw Mr. Schoessler come and go at 3496 Marlette Place, Malaga, Washington, during the period from November 1998 until July 1999.

56. During the period from November 2, 1998, until July 1999, Mr. Schoessler exercised his visitation rights with his son Cameron, by transporting Cameron to 3496 Marlette Place, Malaga, Washington, or having him transported by others to that same address.

57. During the period from November 2, 1998, until July 1999, Mr. Schoessler exercised his visitation rights with his son, Cameron, by being with him either at 3496 Marlette Place, Malaga, Washington, or by taking him fishing elsewhere.

58. The intent of Mr. Schoessler regarding his claimed residence in the City of Wenatchee was not clear until after he filed his Declaration of Candidacy on July 26, 1999.

59. Neither the fact nor the intent of residency of Mr. Schoessler in the City of Wenatchee has been shown during the period from November 2, 1998, until late July 1999.

60. Mr. Schoessler resided at 3496 Marlette Place in Malaga, Washington, from November 2, 1998, until late July, 1999, when he moved to 1350 D Brown Street in the City of Wenatchee.

61. Mr. Schoessler was elected Mayor of the City of Wenatchee on November 2, 1999.

62. Mr. Schoessler was not a resident of the City of Wenatchee for a period of at least one year next preceding his election on November 2, 1999.

63. The residence of Mr. Schoessler was established in Malaga, Washington in 1989.

64. Mr. Schoessler did not have an intent to make 611 North Wenatchee Avenue his permanent residence at any time between November 2, 1998, and late July 1999. The conduct of Mr. Schoessler in going to work at 611 North Wenatchee Avenue and allegedly sleeping overnight at 611 North Wenatchee Avenue, and allegedly living at 611 North Wenatchee Avenue does not constitute a change of residence.

65. Until July 1999, Mr. Schoessler exercised his voting privileges as a resident of Malaga, reported his tax address as Malaga, Washington, and in divorce proceedings acknowledged his address as Malaga, Washington.

66. From November 2, 1998, until late July 1999, Mr. Schoessler continued to be physically present in Malaga, Washington, continued to declare Malaga, Washington, as his "home," and by his conduct determined by all these surrounding circumstances he maintained Malaga, Washington, as his residence.

67. There is no conjunction of the physical presence of Mr. Schoessler with the intention of Mr. Schoessler to remain permanently at 611 North Wenatchee Avenue from November 2, 1998, until late July 1999.

68. The facts in this case do not show a sufficient intention of Mr. Schoessler to remain permanently at 611 North

Wenatchee Avenue or at any other location in the City of Wenatchee to bring about a change of residence during the period of November 2, 1998, until late July 1999.

69. The facts of this case do not support the self-serving declarations of intentions of Mr. Schoessler made at trial on December 27-28, 1999, that he intended to remain permanently at 611 North Wenatchee Avenue, in such a way that that intention can be said to be genuine or bona fide.

70. The election of Gary Schoessler as Mayor of the City of Wenatchee is clearly invalid.

71. The lack of residence in the City of Wenatchee of Gary Schoessler affected the merits of the election.

72. Mr. Schoessler won the election by seven votes out of 7,756 total votes cast.

73. The people of the City of Wenatchee were not afforded an opportunity to observe the candidate for Mayor, Mr. Schoessler, and gain firsthand knowledge about his habits and character due to his lack of residency in the City of Wenatchee during the period from November 2, 1998, until late July 1999.

74. During the period from November 2, 1998, until late July 1999, Mr. Schoessler did not live in the computer file server room at 611 North Wenatchee Avenue, Wenatchee, Washington.

75. During the period from November 2, 1998, until late July 1999, Mr. Schoessler did not live in the house located at 620 South Wilson Street, Wenatchee, Washington.

76. During the period from November 2, 1998, until late July 1999, Mr. Schoessler did not demonstrate a purpose to make any place of residence in the City of Wenatchee, Washington, as his home.

77. During the period from November 2, 1998, until late July 1999, Mr. Schoessler did not demonstrate an intention to establish a present residence in the City of Wenatchee, Washington, as his home.

78. The Petitioners, Sanford W. Brown and Kelvin B. Groseclose, are registered voters in the City of Wenatchee.

79. An Affidavit of Error or Omission was filed by the Petitioners on December 3, 1999.

80. A Certificate of Election was issued to Mr. Schoessler as Mayor of the City of Wenatchee on November 23, 1999.

81. The Affidavit of Error or Omission of the electors, Sanford W. Brown and Kelvin B. Groseclose, was filed no later than ten days following the issuance of the Certificate of Election to Mr. Schoessler.

82. Notice was given to Mr. Schoessler on December 9, 1999, of the hearing.

83. The hearing was held not less than 10 nor more than 20 days from the date of such notice.

84. The Clerk of the Chelan County Superior Court issued a Citation for the person charged with the error or omission, to appear at the time and place specified in the notice, which Citation was delivered to the Sheriff and was served upon the party in person, to wit, Mr. Schoessler.

85. (Respondent's #2) The losing candidate is Pat Notter.

86. (Respondent's #3) *The Wenatchee World*, a newspaper of general circulation in the greater Wenatchee area, published articles on August 5 and 6, 1999, stating that Gary Schoessler's residency in the City of Wenatchee was questionable.

87. (Respondent's #11) A citation was issued by the Mayor on December 9, 1999, setting a hearing in this matter for December 27, 1999.

88. (Portion of Respondent's #18) Gary Schoessler and Andrew moved into an apartment at 1350-D Brown Street, located within the city limits on or about August 2, 1999.

89. (Portion of Respondent's #21) Gary Schoessler had custody of Andrew from October 19, 1981.

90. (Respondent's #24) Gary Schoessler resided at 1350 Brown Street, Unit "D," within the city limits of the City of Wenatchee, continuously from August 2, 1999, to the present[.]

BASED upon the foregoing Findings of Fact, the [c]ourt makes the following:

## CONCLUSIONS OF LAW

1. The one-year residency requirement of RCW 35A.12.030 does not violate any provision of the Constitution, and is not an unreasonable limitation to fulfill the compelling state interest of affording the people of the City of Wenatchee the opportunity to observe the candidate for Mayor and gain firsthand knowledge about his habits and character.[8]

2. A residence once established is presumed to continue and the burden is upon him who asserts a change from a residence once it is established.[9]

3. A residence, once established, continues until a new one is acquired; a change of address does not consist solely in going to and living in another place, but it must be with the intent of making that place the permanent residence.[10]

4. The term "home" or "residence" implies the exercise of the exclusive privilege of selection by an individual.[11]

5. The presumption is against a change of residence; therefore, the burden of proof rests upon the one alleging such change.[12]

6. Traditional formulas require conjunction of physical presence and intention to remain permanently in the new location to bring about a change of residence. There is usually no question as to the first of these two elements; the conflict is usually confined to the element of intention, that is, whether or not a sufficient intention is shown by the facts. In determining the sufficiency of intention, a proper subject of inquiry is the bona fides of that intention. In other words, do the facts support the

---

[8]Clerk's Papers at 19 n.1 (citing *Lawrence v. City of Issaquah*, 84 Wn.2d 146, 524 P.2d 1347 (1974)).

[9]*Id.* at n.2 (citing *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 902 n.10, 969 P.2d 64 (1998)).

[10]*Id.* at n.3.

[11]*Id.* at n.4 (citing *In re Application of Mullins*, 26 Wn.2d 419, 444, 174 P.2d 790 (1946)).

[12]*Id.* at 20 n.5 (citing *Mullins*, 26 Wn.2d at 445).

self-serving declaration of intention in such a way that the intention can be said to be genuine or bona fide.[13]

7. Election contests are governed by several general principles. Chief among them is the principle that the judiciary should exercise restraint in interfering with the elective process which is reserved to the people in the state Constitution. Unless an election is clearly invalid, when the people have spoken, their verdict should not be disturbed by the Courts. In adhering to this principle of judicial restraint, this Court will follow the rule that an informality or irregularity in an election which did not affect the result is not sufficient to invalidate the election. But provisions which affect the merits are mandatory, and, if not followed, will void an election.[14]

8. Statutory provisions regarding qualifications of candidates, such as a residence requirement, directly and substantively affect an election because they place restrictions upon who can be a candidate, and, consequently, are not mere technicalities.[15]

9. Election statutes are considered remedial and should be liberally construed. In particular, statutes establishing qualifications for office are to be construed to unfetter the process of election rather than curtail the freedom to stand for office.[16]

10. An intention to acquire a residence in the future is not enough to demonstrate a change of residence.[17]

11. The intention to establish residence must relate to a present residence, and residence, once established, is presumed to continue.[18]

---

[13]*Id.* at n.6 (citing *Mullins*, 26 Wn.2d at 444).

[14]*Id.* at n.7 (citing *Dumas v. Gagner,* 137 Wn.2d 268, 283-84, 971 P.2d 17 (1999))

[15]*Id.* at n.8 (citing *Dumas v. Gagner,* 137 Wn.2d at 284).

[16]*Id.* at n.9 (citing *Dumas v. Gagner,* 137 Wn.2d at 283-84).

[17]*Id.* at n.10 (citing *Freund v. Hastie,* 13 Wn. App. 731, 734, 537 P.2d 804 (1975), *review denied,* 86 Wn.2d 1001 (1975)).

[18]*Id.* at n.11.

12. One who asserts a change of residence bears the burden of proof.[19]

13. The Affidavit of Error or Omission was timely filed under RCW 29.65.020.

14. The requirements of notice and service and time limitations set forth in RCW 29.65.040 have been met.

15. Mr. Schoessler did not reside in Wenatchee, Washington, from November 2, 1998, until late July 1999.[20]

On January 7, 2000, Judge Bridges entered a judgment voiding the election of Appellant as mayor of the City of Wenatchee.[21] The trial court also granted Appellant's motion to stay enforcement of the judgment pending direct appeal to this Court.[22] On January 11, 2000, Appellant filed a notice of appeal to this Court.[23] Review was granted on January 24, 2000.[24]

## DISCUSSION

RCW 35A.12.030 reads:

**Eligibility to hold elective office.** *No person shall be eligible to hold elective office under the mayor-council plan unless the person is a registered voter of the city at the time of filing his declaration of candidacy and has been a resident of the city for a period of at least one year next preceding his election.* Residence and voting within the limits of any territory which has been included in, annexed to, or consolidated with such city is construed to have been residence within the city. A mayor or councilman shall hold within the city government no

---

[19]*Id.* at n.12.

[20]*Id.* at 8-21.

[21]*Id.* at 25-27.

[22]Report of Proceedings at 14-15, Court's Oral Decision, Dec. 28, 1999.

[23]Clerk's Papers at 6-7.

[24]The record does not contain an order specifically granting direct review. However, the Supreme Court Commissioner on January 24, 2000 issued a ruling granting a temporary stay and setting an expedited briefing schedule for appeal. The Supreme Court Clerk considers this as an order granting direct review.

other public office or employment except as permitted under the provisions of chapter 42.23 RCW.

(Emphasis added.)

Appellant claims the burden of proof in an election contest should rest on the contestant to prove by clear, cogent and convincing evidence that a candidate is ineligible under RCW 35A.12.030 and that this ineligibility materially affected the outcome of the election.[25] He further claims that under this burden and standard of proof, the trial court erred with respect to 21 findings of fact and in concluding as a matter of law that Appellant did not satisfy the one-year residence requirement of RCW 35A.12-.030.[26] In the alternative, Appellant claims the word "resident" under RCW 35A.12.030 is unconstitutionally vague so as to void the statute under the Fourteenth Amendment to the United States Constitution.[27]

### STANDARD OF REVIEW

■■ "It is well-established law that an unchallenged finding of fact will be accepted as a verity upon appeal."[28] This Court will review only findings of fact to which error has been assigned.[29] The challenged findings will be binding on appeal if they are supported by substantial evidence in the record.[30] "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding."[31]

The findings of fact in this case identify six different addresses at which Appellant could have established his "res-

---

[25]Br. of Appellant at 25-32.

[26]Id. at 32-51. Appellant highlights findings of fact 22, 26, 27, 28, 29, 39, 58, 59, 60, 62, 64, 66, 67, 68, 69, 70, 72, 73, 74, 76 and 77 in his brief.

[27]Id. at 51-54.

[28]State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

[29]Id. at 647.

[30]Id.

[31]Id. at 644.

idence" under RCW 35A.12.030.[32] Of these addresses, only three are within the city limits of Wenatchee: (1) 1350 Brown Street, Unit D; (2) 620 South Wilson Street; and (3) 611 North Wenatchee Avenue.[33] Finding of fact 90 indicates Appellant "resided at 1350 Brown Street, Unit 'D,' within the city limits of the City of Wenatchee, continuously from August 2, 1999, to the present."[34] This finding is not challenged and thus is considered a verity.

Appellant listed the Wilson Street address and the North Wenatchee Avenue address in his declaration of candidacy filed July 26, 1999.[35] On December 9, 1999, he signed under oath an affidavit stating: "In November 1998, I moved into a house owned by my brother-in-law, Michael D. Wood, located at *620 South Wilson* in Wenatchee. I lived in that house until August 2, 1999 . . . ."[36] Finding of fact 48 indicates Appellant admitted at trial he never lived at 620 South Wilson Street despite his sworn affidavit and finding of fact 75 indicates he never lived at that address. Neither finding was challenged by Appellant. They are thus treated as verities.

Appellant now claims he lived exclusively at 611 North Wenatchee Avenue in Wenatchee from November 2, 1998 to August 2, 1999. He takes exception to findings of fact which state he "resided" approximately eight miles outside the city of Wenatchee at 3496 Marlette Place in Malaga,

---

[32]The six different locations are: (1) 1350 Brown Street, Unit D; (2) 620 South Wilson Street; (3) 611 North Wenatchee Avenue; (4) 3496 Marlette Place; (5) 1808 Rogers Drive; and (6) Appellant's boat on Lake Chelan. Clerk's Papers at 8, 10-11.

[33]*See id.* at 8, 11. Two of the six addresses are 1808 Rogers Drive which is "outside the city limits of Wenatchee" (finding of fact 3) and 3496 Marlette Place in Malaga, Washington, which "is approximately eight miles outside the city limits of Wenatchee, Washington." (finding of fact 20).

[34]Clerk's Papers at 18.

[35]*Id.* at 107.

[36]*Id.* at 14 (emphasis added).

Washington during that period.[37] It is not disputed that Appellant was a resident of the City of Wenatchee for the three-month period from August 2, 1999 to November 2, 1999. But the real question in dispute in this case is whether Appellant was a resident of the City of Wenatchee for the nine month period from November 2, 1998 to August 2, 1999 to satisfy the one-year residence requirement under RCW 35A.12.030.

The following chart illustrates the critical dates, the unchallenged finding of fact concerning residence, the challenged finding of fact concerning residence, and the disputed claim of residence by Appellant:

*CONSTITUTIONALITY OF RCW 35A.12.030*

In *Lawrence v. City of Issaquah*, appellant challenged the constitutionality of the one-year residence requirement

---

[37]Br. of Appellant at 1. See findings of fact 22, 26, 27, 28, 29, 39, 58, 59, 60, 62, 64, 66, 67, 68, 69, 70, 72, 73, 74, 76 and 77.

under RCW 35A.12.030.[38] This Court concluded the require-
ment did not violate the due process clause and equal
protection clause of the Fourteenth Amendment, the
fundamental constitutional right to travel and the First
Amendment rights of political association and freedom of
expression.[39] In upholding its constitutionality under the
equal protection clause, this Court stated:

> We are satisfied . . . that the residential requirement of 1 year
> for the office of city councilman, as in the instant case, is not
> an unreasonable limitation to fulfill the compelling state inter-
> est of affording the candidate for that office the opportunity to
> be exposed to the needs and problems of the people of [that
> city], and at the same time to afford the people of [that city]
> the opportunity to observe the candidate for city council and
> gain firsthand knowledge about his or her habits and charac-
> ter.[40]

 Appellant nonetheless claims RCW 35A.12.030 is
unconstitutional because the word "resident" in the stat-
ute is vague.[41] "A statute is void for vagueness if it is
framed in terms so vague that persons 'of common intel-
ligence must necessarily guess at its meaning and differ as
to its application.' The purpose of the vagueness doctrine is
to ensure that citizens receive fair notice as to what conduct
is proscribed, and to prevent the law from being arbitrarily
enforced."[42] The prohibition against vague laws, however,
is not absolute because some measure of vagueness is inher-

---

[38]84 Wn.2d 146, 147, 524 P.2d 1347 (1974). Former RCW 35A.12.030 (1967)
provided in part: "No person shall be eligible to hold elective office under the
mayor-council plan unless *he shall have been* a registered voter and resident of
the city for a period of at least one year next preceding his election." *Lawrence*,
84 Wn.2d at 149 (emphasis added).

[39]*Id.* at 149-52.

[40]*Id.* at 150-51.

[41]Br. of Appellant at 51-54.

[42]*Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 739-40, 818 P.2d 1062
(1991) (citations omitted).

ent in the use of language.[43] "Condemned to the use of words, we can never expect mathematical certainty from our language."[44] "Consequently, a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which [that person's] actions would be classified as prohibited conduct."[45]

■ ■ RCW 29.01.140 defines the word "residence" by these words: " 'Residence' for the purpose of registering and voting means a person's permanent address where he physically resides and maintains his abode . . . ." Title 35A of the Revised Code of Washington, however, does not define the word "resident" as used in RCW 35A.12.030. In the absence of a statutory definition, this Court stated:

> The concept of residency arises in several contexts such as adoption, dissolution of marriage, service of process, and validity of wills, as well as voting and holding office. The Restatement (Second) of Conflict of Laws, states: "Residence is an ambiguous word whose meaning in a legal phrase must be determined in each case." This court has observed that " '[e]ach of the terms "reside," "residing," "resident," and "residence" is elastic. To interpret the sense in which such a term is used, we should look to the object or purpose of the statue in which the term is employed.' "[46]

Even if it is determined to be elastic, ambiguous and undefined, the word "resident" does not render RCW 35A.12.030 unconstitutionally vague. The Washington Constitution uses the word "residence" without defining it.[47] Unchallenged findings of fact also indicate Appellant had fair notice of the meaning of the word. Finding of fact 40

[43]*Id.* at 740 (concluding that RCW 18.130.180(1) was not unconstitutionally vague even with its use of the uncertain term "moral turpitude").

[44]*Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) (quoted in *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d at 740).

[45]*City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988).

[46]*Dumas v. Gagner*, 137 Wn.2d 268, 286, 971 P.2d 17 (1999) (interpreting the word "resides" as used in RCW 53.12.010(1)(a)) (citations omitted).

[47]Const. art. VI, § 4.

states that "In July 1999, Mr. Schoessler asked his former wife, Ms. Patti Schoessler, who resides at 32 Harrison Street in the City of Wenatchee, if he could use her address because he needed to be a resident of Wenatchee for at least one year." Finding of fact 41 states that "Mr. Schoessler asked Ms. Patti Schoessler to falsify information about his residency."

The meaning of "resident" under RCW 35A.12.030 is measured against the purpose of the one-year residence requirement to allow "the candidate 'to be exposed to the needs and problems of the people' of the particular city."[48] The meaning need not achieve "mathematical certainty" but depends upon either a narrow or broad construction of the term. In *Dumas v. Gagner,* this Court favored a broad construction of the word "resides" under RCW 53.12.010(1) because of the strong public policy in favor of eligibility for public office and the unique facts of that case.[49] Appellant Sue Frost in the *Dumas* case physically resided in a house located on one of three contiguous lots which she owned and considered as one residential property. The lot on which her house was located was not in the commissioner district she was elected to represent,[50] but the two other lots were in the district she was elected to represent.[51] Although the lots were transected by a political boundary line, appellant relied in good faith, "[t]hrough no fault of her own," on the county auditor's erroneous assignment of precinct.[52] This Court concluded that, given the limited factual context presented in *Dumas*, a narrow construction of the word "resides" would not serve the purpose of the residence

---

[48]*Dumas v. Gagner,* 137 Wn.2d at 287 (citations omitted).

[49]*Dumas v. Gagner,* 137 Wn.2d 268, 283, 294, 971 P.2d 17 (1999).

[50]*Id.* at 276-78 (distinguishing Lot One from Lots Five and Six).

[51]*Id.* at 283.

[52]*Id.* at 290, 294.

requirement under RCW 53.12.010(1)(a) in achieving geographic balance on the Port of Kennewick Commission.[53]

Unlike *Dumas*, this case has no facts which would justify a broad construction of the word "resident" under RCW 35A.12.030. There is no claim of contiguity of the addresses. The address of 3496 Marlette Place in Malaga, Washington is approximately eight miles outside the city limits of Wenatchee.[54] Appellant did not exercise good faith compliance with the residence requirement when he asked his former wife to falsify information about his residence.[55] He also did not exercise good faith compliance when he filed a sworn affidavit on December 9, 1999 stating he lived at 620 South Wilson Street, but later admitted at trial he never lived at that address.[56]

Under the facts in this case, the question arises whether any construction of "residence" under RCW 35A.12.030 would reasonably include a computer file server room at Appellant's business address at 611 North Wenatchee Avenue in Wenatchee, from which Appellant was seen emerging only one or several mornings during a 10-month period. Appellant argues the burden of proof of his nonresidence is upon the parties contesting the election and that they must overcome a presumption of eligibility for public office by clear, cogent and convincing evidence. While announcing a strong public policy in favor of eligibility, this Court has not directly addressed the burden of proof and standard of proof in an election contest. But RCW 29.65.050 relating to hearings in election contests states in part:

> *After hearing the proofs and allegations of the parties*, the court shall pronounce judgment in the premises, either confirming or annulling and setting aside such election, according to the law and right of the case.

(Emphasis added.)

---

[53]*Id.* at 287, 294.

[54]*See* Clerk's Papers at 11, Unchallenged finding of fact 20.

[55]*See id.* at 13, Unchallenged findings of fact 41.

[56]*See id.* at 14, Unchallenged findings of fact 47 and 48.

By its plain language, this statute does not limit proofs simply to one party, although it provides for dismissal if the statement of the cause is "insufficient." The burden of proof in any case is typically on the plaintiff.[57] That being so, the party contesting an election under RCW 35A.12.030 bears the initial burden of proving a successful candidate did not satisfy the one-year residence requirement.

In this case, the finding of fact is unchallenged that Appellant established his residence in Malaga, Washington in 1989. But the evidence that he changed his residence to a Wenatchee address before August 2, 1999 was in dispute and not established before the court trial. Petitioners Dr. Brown and Reverend Groseclose established by overwhelming evidence that Appellant did not satisfy the requirement of RCW 35A.12.030 for residence in the City of Wenatchee one year prior to November 2, 1999.

We need not address the standard of proof in this case because of these unchallenged findings of fact determined by the trial court:

Appellant was not a resident of the City of Wenatchee for a period of at least one year next preceding his election on November 2, 1999; 611 North Wenatchee Avenue is the address of Appellant's business CRCWNET in Wenatchee, Washington; the computer file server room at that address has dimensions of 15 feet by 20 feet; until July 1999, Appellant's residential telephone records, cellular telephone records and one of four electric utility bills were sent to his address in Malaga, Washington and not to an address in Wenatchee, Washington; until July 14, 1999, Appellant's driver's license and voter registration showed his address as Malaga, Washington and not Wenatchee, Washington; until July 1999, Appellant exercised visitation rights with his son, Cameron Schoessler, by transporting him or having others transport him to 3496 Marlette Place in Malaga, Washington; Chelan County Deputy Sheriff Ken Varichak

---

[57]5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 301.2 (4th ed. 1999).

testified that on April 2, 1999, Appellant stated his address was Malaga, Washington and not Wenatchee, Washington; Appellant's 1998 U.S. Individual Income Tax Return Form 1040, prepared and filed in 1999, showed his address as Malaga, Washington and not Wenatchee, Washington; Appellant's automobile insurance policy records and homeowner's insurance policy records indicated his address as Malaga, Washington and not Wenatchee, Washington; Jerry Isenhart and Jim Martin testified that in telephone conversations between January 1999 and June 1999, Appellant referred to his "home in Malaga"; and Ms. Joyce Davis, Tim Finnigan and Marcus Knemeyer gave testimony which provided a strong inference that Appellant lived in Malaga, Washington from November 2, 1998 to July 1999.

Under these unchallenged findings of fact and our narrow construction of the word "resident," Dr. Brown and Reverend Groseclose established without question that Appellant was not a resident of the City of Wenatchee from November 2, 1998 to August 2, 1999.

Appellant did not convince the trial court that he changed his residence from Malaga, Washington to Wenatchee, Washington before August 2, 1999. He relied upon his own testimony and that of his present wife, Ms. Jo Schoessler, his son Andrew Schoessler and business partner Shawn Osborn to establish his claim that he did not live in Malaga, Washington, but instead lived in Wenatchee, Washington.[58] Mr. Osborn may have observed Appellant several times in the morning looking "like he was pretty well tired or just woke up," but he never saw Appellant actually sleeping in the server room at 611 North Wenatchee Avenue in Wenatchee. Testimony of Appellant's current wife, Ms. Jo Schoessler, and his son, Andrew Schoessler, was inconsistent with unchallenged finding of fact 10 that on June 13, 1999 "Andrew Schoessler stated to Officer Paul Hughes of the Wenatchee Police Department that both his address and his father's address [was] 3496 Marlette Place, Malaga, Washington."

[58]Br. of Appellant at 33-39.

Because of the narrow construction we apply to the word "resident" in this case, and the unchallenged findings of fact, we conclude the trial court correctly determined as a matter of law that Appellant Gary L. Schoessler was ineligible to serve as mayor of the City of Wenatchee because he did not satisfy the residence requirement under RCW 35.A.12.030 that he reside in the City of Wenatchee for one year prior to the election on November 2, 1999. Appellant was nine months short of satisfying that requirement. It was established without dispute that he did reside in the City of Wenatchee beginning August 2, 1999, only three months prior to the election on November 2, 1999. The trial court was correct in annulling and setting aside Appellant's election as mayor of the City of Wenatchee.

## SUMMARY AND CONCLUSIONS

The one-year residence requirement under RCW 35A.12.030 is stated by these words: "No person shall be eligible to hold elective office under the mayor-council plan unless the person is a registered voter of the city at the time of filing his declaration of candidacy and has been a resident of the city for a period of at least one year next preceding his election." RCW 35A.12.030 is not unconstitutionally vague simply because the word "resident" is not defined. Its meaning need not achieve mathematical certainty but is measured against the purpose of RCW 35A.12.030 to allow a candidate to be exposed to the needs and problems of the people of a particular city. Unchallenged findings of fact establish that Appellant had fair notice and was aware of the meaning of the word "resident" and its significance to his eligibility for election to the office of mayor.

The word "resident" lends itself to either a broad or narrow construction. There are no findings of fact in this case to justify a broad construction of the word. We therefore give the word a narrow construction. The question arises whether any construction of "resident" or "residence" under RCW 35A.12.030 would include a computer file

server room at Appellant's business address at 611 North Wenatchee Avenue in Wenatchee, Washington. We think not.

In this case, unchallenged finding of fact 63 indicates Appellant established his residence in Malaga, Washington in 1989. He established only that he changed his residence to 1350 Brown Street, Unit D, in Wenatchee, Washington on August 2, 1999. He did not, however, establish a change of his residence from the Malaga address to 611 North Wenatchee Avenue or any other address in Wenatchee, Washington before November 2, 1998, the date one year prior to the election on November 2, 1999.

Petitioners Dr. Sanford W. Brown and Reverend Kelvin B. Groseclose by overwhelming evidence established before the trial court that Appellant was not a resident of any address in the City of Wenatchee from November 2, 1998 to August 2, 1999. The unchallenged findings of fact and a narrow construction of "resident" indicate Appellant was nine months short of satisfying the one-year residence requirement of RCW 35A.12.030. The trial court was correct in concluding as a matter of law that Appellant was ineligible to serve as mayor of the City of Wenatchee.

We affirm the decision of the Chelan County Superior Court which annulled and set aside the election of Appellant Gary L. Schoessler as mayor of the City of Wenatchee. We set aside the stay of enforcement granted by the trial court and the temporary stay granted by the Supreme Court Commissioner, effective upon filing this opinion.

GUY, C.J., and JOHNSON, ALEXANDER, TALMADGE, SANDERS, IRELAND, and BRIDGE, JJ., concur.

MADSEN, J., concurs in the result.